E
X
H
I
B
I
T

A

EXHIBIT A

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

Olivia Lee, as surviving spouse and
Personal Representative of the Estate of Martavias Watkins

Plaintiff,

v.

Florida Department of Corrections, Centurion of Florida, LLC,
Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN,
Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN,
Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN,
Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD,
and Pierre Antoine Marceus MD

Defendants.

_____/

## **COMPLAINT FOR MEDICAL NEGLIGENCE, WRONGFUL DEATH, AND FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 USC 1983**

Plaintiff, Olivia Lee, as surviving spouse and Personal Representative of the Estate of Martavias Watkins, hereby sues the Defendants, Florida Department of Corrections, Centurion of Florida, LLC, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD, and Pierre Antoine Marceus MD, and states as follows:

1.      This is a medical negligence case arising out of the care and treatment rendered to Martavias Watkins while he was incarcerated at the South Florida Detention Center. As a result of the Defendants' medical negligence and the violation of Watkins' Constitutional Rights under the Eight and Fourteenth Amendments to the United States Constitution, he passed away.

2.       This is an action in excess of Thirty Thousand ($30,000.00) Dollars, exclusive of costs, attorney's fees, and interest.

3.       The surviving heirs of Martavias Watkins, deceased, are Olivia Lee, his spouse, and Taylor Watkins, his minor daughter.

4.       Olivia Lee is or will be appointed the Personal Representative of the Estate of Martavias Watkins.

5.       Defendant, Florida Department of Corrections, is a political subdivision of the State of Florida and is responsible for operating and administering the prison system in the State of Florida, including rh South Dade Reception Center.

6.       Defendant, Centurion of Florida, LLC, is a corporation organized and existing under the laws of the State of Florida, authorized to do business in the State of Florida and was, in fact, at all times material hereto, engaged in business in Miami, Miami-Dade County, Florida.

7.       At all times material hereto, Centurion was under contract with the FDOC to provide comprehensive healthcare to inmates housed at South Dade Reception Center and other various state prison facilities in Florida.

8.       Defendants, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD, and Pierre Antoine Marceus MD were licensed healthcare providers who were employees and/or agents of Centurion of Florida and/or the FDOC, and who provided healthcare and medical services to the decedent, Watkins, while he was at the South Florida Reception Center.

9.       At all times material hereto, the Defendants, Centurion of Florida, the FDOC, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula

Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD, and Pierre Antoine Marceus MD, held themselves out physicians and/or medical providers properly skilled in the care and treatment of persons such as the Decedent, Watkins. By virtue of being incarcerated by the FDOC, the decedent became a patient of the Defendants.

## COMPLIANCE WITH CONDITIONS PRECEDENT
## AND FLORIDA STATUTE 766.106(2)

10.     A Notice of Intent to Initiate Litigation against all Defendants and/or those bearing a legal relationship with the named Defendants was given and acknowledged in accordance with the requirements of Section 766.106(2) of the Florida Statutes.

11.     Defendant, Centurion of Florida, and its doctors, nurses, and staff denied the Claimant's claim. Defendant, FDOC, failed to respond to the Notice of Intent, despite two attempts to send the Notice of Intent to the FDOC.

12.     That this action has been properly brought within two (2) years of when the alleged negligent incident occurred or within two (2) years from the date the alleged negligent incident could have been discovered through the exercise of due diligence and not later than four (4) years from when the incident occurred.

## CERTIFICATE OF COUNSEL

13.     Through counsel's signature below, it is hereby certified pursuant to Section 766.203 of the Florida Statutes that counsel for the Plaintiff, prior to the filing of action, has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there was negligence in the diagnosis, care, and treatment of MARTAVIAS WATKINS resulting in his death. Further, such reasonable investigation has given rise to a good faith belief that grounds exist for an action against the named Defendants.

## **FACTS COMMON TO ALL COUNTS**

14.     The Decedent, Martavias Watkins, had a tracheotomy in 2016 as a result of an injury to his face, neck, and throat area.  The tracheotomy required frequent medical attention and intervention.

15.     The FDOC, Centurion, and the doctors, nurses, and staff employed by Centurion and/or the FDOC failed to appropriately treat, diagnose, and manage Watkins' care, including his tracheal care.

16.     As a result of the Defendants' failures, Mr. Watkins died on September 2, 2019.

17.     Throughout his treatment by the Defendants, both Watkins and his mother repeatedly complained about issues with the care and treatment and asked the Defendants to provide him with appropriate care for his tracheal tube and the infection that was brewing in his body.  These multiple requests for treatment fell on deaf ears.

18.     Specifically, the decedent, Martavias Watkins, was seen by the Defendants on multiple occasions, including but not limited to 7/2/2019, 7/10/2019, 7/24/2019, 7/26/2019, 8/3/2019, 8/5/2019, 8/8/2019, 8/13/2019, 8/20/2019, 8/28/2019, 8/29/2019, 8/30/2019, 8/31/2019, and 9/2/2019, during which the Defendants failed to provide the decedent with medical care within the applicable standard of care.

19.     Furthermore, on 8/13/19 Mr. Watkins submitted a written Inmate Sick Call Request on which he documented:

"My tube in my neck is starting an infection and it is starting to smell and my legs is swelling up real bad.  On my right leg I've got this know that is coming from nowhere.  Can I get checked for high blood pressure."  On 8/20/19 a health slip/pass was authorized by M Castillo MD ordered that Mr. Watkins' trach bandage be changed daily from 8/20/19 to 8/26/19.

20.     On 8/28/19 Mr. Watkins presented to P. Rojas RN at 1915, stating that he was coughing up blood for one month.  He stated that the onset of symptoms was gradual and included cough, fever, hoarseness, sneezing, sore throat rated 7-8/10, headache muscle aches 6/10, nasal symptoms, chest soreness with inspiration or cough 8/10, and fatigue.  At the time of this evaluation, his oxygen saturation was 97%.

21.     A chest x-ray was performed on 8/29/19 which concluded that there was persistent right lung volume loss with increased right superhilar density, perhaps a chronic segmental collapse in the right upper lobe.  Chest CT was recommended for correlation.

22.     On 8/30/19 Defendant, Mederos, documented that Mr. Watkins was referred by the infirmary nurse for evaluation related to complaint of coughing up blood.

23.     Later that day, Defendant, Pino, documented that Mr. Watkins was already scheduled to see a specialist.  He was noted to be clinically stable, with the T-tube in place, no abnormalities.  Pino noted that Mr. Watkins' prior CT was of the neck, and he would proceed with CT scan of the chest.

24.     Subsequently, at 2200 Mr. Watkins presented to Defendant, Rojas, via wheelchair stating "Nurse, I'm still bleeding".  Rojas noted a moderate amount of blood coming from the tracheostomy.  Her plan was to admit Mr. Watkins for 23 hour observation.

25.     At 2240 Mr. Watkins was admitted to the DOC infirmary 23 hour observation unit for coughing up blood.

26.     Despite not improving and having persistent symptoms, Defendants discharged Mr. Watkins back to his dorm.

27.     On 9/2/19, Mr. Watkins arrived at the DOC infirmary via wheelchair, escorted by security as a medical emergency.  Mr. Watkins was coughing blood from his tracheostomy.

28.     The Defendants collectively failed to treat, diagnose, and care for Mr. Watkins pulmonary infection and hemoptysis. Unfortunately, Mr. Watkins died as a result of the substandard care and lack thereof that he received from the Defendants.

29.     The Defendants collectively failed to diagnose and treat Martavias Watkins' serious medical needs, specifically his tracheal care, coughing up blood, being unable to breath, severe pain, infection, deteriorating condition and life-threatening state, which was made known to the Individual Healthcare Provider Defendants through their discussions and treatment of the Decedent, his obvious signs and symptoms, his medical history, his written and verbal complaints, and the complaints of his family members, resulting in his death.

<u>**COUNT I**</u>

<u>**MEDICAL NEGLIGENCE RESULTING IN WRONGFUL DEATH AGAINST DEFENDANTS, PAULA ROJAS, R.N., MARITZA MEDEROS RN, MARILYN C. AUDAIN RN, ELIZABETH JOYCE CARTER ARNP, PAULA ROSAN SWASEY, LPN, YANEISYS MARTIN ROJAS, RN, CARMEN DORCE EXANTUS, LPN, INEMESIT NYONG ABIA MD, MARTA A. CASTILLO MD, ANTONIO SERGIO PINO MD, AND PIERRE ANTOINE MARCEUS MD**</u>

Plaintiff realleges and readopts paragraphs 1-29 and states:

30.     Defendants, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD, and Pierre Antoine Marceus MD (collectively, the "Individual Healthcare Provider Defendants") were the healthcare providers who provided medical treatment and care to the decedent, Martavias Watkins, while he was incarcerated at the FDOC.

31.     At all times material hereto, the Individual Healthcare Provider Defendants were assigned by the FDOC and/or Centurion to provide medical services to the Decedent, Martavias Watkins.

32.     At all times material hereto, the Individual Healthcare Provider Defendants, had a duty to provide appropriate medical care under the applicable standard of medical care.

33.     The Individual Healthcare Provider Defendants breached their duties by failing to appropriately treat, diagnose, and care for Martavias Watkins as described in the factual allegations above, by failing to provide appropriate tracheal care and treatment, and failing to treat and diagnose his grave infection, resulting in his death.

34.     The Individual Healthcare Provider Defendants collectively failed to diagnose and treat Martavias Watkins' serious medical needs, specifically his tracheal care, coughing up blood, being unable to breath, severe pain, infection, deteriorating condition and life-threatening state, which was made known to the Individual Healthcare Provider Defendants through their discussions and treatment of the Decedent, his obvious signs and symptoms, his medical history, his written and verbal complaints, and the complaints of his family members, resulting in his death.

35.     As a direct and proximate result of the abovementioned negligence committed by the Individual Healthcare Provider Defendants, the decedent's condition was not appropriately treated and diagnosed, and he passed away as a result of the Individual Healthcare Provider Defendants' negligence.

36.     As a direct and proximate result of the negligence of the Individual Healthcare Provider Defendants, the Plaintiff, the ESTATE OF MARTAVIAS WATKINS and his survivors, including his wife and children, have in the past and will in the future suffer the following damages:

   a.   Medical, funeral, and burial expenses due to Martavias Watkins' death; that have become a charge of his Estate and/or that have been paid on behalf of the decedent.

   b.   Loss of support and services, loss of Watkins' companionship, loss of parental guidance, loss of consortium, and for mental pain and suffering resulting from the loss of Watkins.

    c.   All damages allowable under Florida Law and Florida's Wrongful Death Act.

    d.   Loss net accumulations of the Estate.

**WHEREFORE**, the Plaintiff demands judgment against Defendants, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD, and Pierre Antoine Marceus MD, for damages in a sum in excess of the minimal jurisdictional limits of this Court, together with costs of this suit, and any other relief this Court deems proper, and demands a trial by jury on all issues so triable.

**COUNT II**
**42 U.S.C. § 1983 - CIVIL RIGHTS CLAIM**
**VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE**
**UNITED STATES CONSTITUTION FOR**
**DELIBERATE INDIFFERENCE TO MARTAVIAS WATKINS' KNOWN SERIOUS**
**MEDICAL NEED**
**AGAINST DEFENDANTS, PAULA ROJAS, R.N., MARITZA MEDEROS RN,**
**MARILYN C. AUDAIN RN, ELIZABETH JOYCE CARTER ARNP, PAULA ROSAN**
**SWASEY, LPN, YANEISYS MARTIN ROJAS, RN, CARMEN DORCE EXANTUS, LPN,**
**INEMESIT NYONG ABIA MD, MARTA A. CASTILLO MD, ANTONIO SERGIO PINO**
**MD, AND PIERRE ANTOINE MARCEUS MD**

Plaintiff realleges and readopts paragraphs 1-29 and states:

37.    Plaintiff, Olivia Lee, as Personal Representative and surviving spouse of Martavias Watkins, seeks relief under the Federal Civil Rights Act, 42 U.S.C. § 1983 for infringement and deprivation of certain constitutional and fundamental rights under the Eighth and Fourteenth Amendments by Defendants, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD,

and Pierre Antoine Marceus MD (collectively, the "Individual Healthcare Provider Defendants"), in connection with the denial and deprivation of essential medical care to Martavias Watkins.

38.     Individual Healthcare Provider Defendants, while acting under color of state law and by virtue of the authority vested in her by the State of Florida or its subdivisions or agencies, failed to provide treatment and in fact denied treatment for Martavias Watkins' serious medical needs, specifically his tracheal care, coughing up blood, being unable to breath, severe pain, infection, deteriorating condition and life-threatening state, which was made known to the Individual Healthcare Provider Defendants through their discussions and treatment of the Decedent, his obvious signs and symptoms, his medical history, his written and verbal complaints, and the complaints of his family members.

39.     The Individual Healthcare Provider Defendants had a constitutional duty to provide adequate medical care to individuals imprisoned or incarcerated at FDOC facilities, including the Decedent, Martavias Watkins.

40.     Individual Healthcare Provider Defendants had a constitutional duty to provide adequate medical care to the Decedent, Martavias Watkins, who presented to the infirmary in a deteriorating health state on each visit, was begging for adequate and prompt health care, and had obvious signs and symptoms of a life-threatening condition and infection.

41.     The Individual Healthcare Provider Defendants, had a constitutional duty to provide adequate medical care to the Decedent, Watkins, as his condition deteriorated.

42.     Individual Healthcare Provider Defendants knew and/or should have known of Watkins' serious medical needs, including his tracheal care, coughing up blood, being unable to breath, severe pain, infection, deteriorating condition and life-threatening state, which was made known to the Individual Healthcare Provider Defendants through their discussions and treatment

of the Decedent, his obvious signs and symptoms, his medical history, his written and verbal complaints, and the complaints of his family members.

43. Notwithstanding the actual knowledge of the Decedent, Watkins', serious medical needs and the authority to address them, the Individual Healthcare Provider Defendants failed to treat and in fact refused to treat the Decedent for those needs and further, to investigate the cause(s) of his deteriorating state, and life-threatening condition.

44. The Individual Healthcare Provider Defendants' failure and/or refusal to treat Watkins for his serious medical needs, to investigate the cause(s) thereof and to respond appropriately to Watkins' medical condition, when they knew a delay and/or denial of treatment would be a serious detriment to Watkins, constituted deliberate indifference to Watkins' serious medical needs, as well as the unnecessary and wanton infliction of pain proscribed by the Eighth and Fourteenth Amendments.

45. The Individual Healthcare Provider Defendants' deliberate indifference to Watkins' serious medical needs, as well as the unnecessary and wanton infliction of pain proscribed by the Eighth and Fourteenth Amendments resulted in Watkins' untimely death.

46. The Individual Healthcare Provider Defendants' failure and/or refusal to treat Watkins for his serious medical needs, to investigate the cause(s) thereof and to respond appropriately to Watkins 'medical condition, when they knew or should have known that a delay and/or denial of treatment would be a serious detriment to Watkins, was grossly incompetent and inadequate as to shock the conscience or to be intolerable to fundamental fairness.

47. The Individual Healthcare Provider Defendants' actions and/or omissions clearly violated established constitutional rights afforded to the Decedent, Watkins', rights which any reasonable person knew or should have known existed.

48.     The violations of established constitutional rights were a product of the Individual Healthcare Provider Defendants' own willful blindness and failure to act as to Watkins.

49.     The Individual Healthcare Provider Defendants are liable based on their direct participation with respect to Watkins, by virtue of their own actions and/or omissions in failing to treat and in fact refusing to treat Watkins for his serious medical needs and further, to investigate the cause(s) of his deteriorating state.

50.     The Individual Healthcare Provider Defendants' actions and/or omissions caused Decedent, Watkins, to be subject to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, including the right not to be subject to cruel and unusual punishment as guaranteed to inmates by the Eighth and Fourteenth Amendment, and ultimately resulted in his death.

51.     As a direct and proximate result of the deprivation of federally protected constitutional rights and deliberate indifference to a known serious medical need exercised by the Individual Healthcare Provider Defendants, the Decedent, Watkins, died.

52.     As a direct and proximate result of the civil rights violations of the Individual Healthcare Provider Defendants, the Plaintiff, the ESTATE OF MARTAVIAS WATKINS and his survivors, including his wife and children, have in the past and will in the future suffer the following damages:

    e.  Medical, funeral, and burial expenses due to Martavias Watkins' death; that have become a charge of his Estate and/or that have been paid on behalf of the decedent.

    f.  Loss of support and services, loss of Watkins' companionship, loss of parental guidance, loss of consortium, and for mental pain and suffering resulting from the loss of Watkins.

    g.  All damages allowable under Florida Law and Florida's Wrongful Death Act.

    h.  Loss net accumulations of the Estate.

**WHEREFORE**, the Plaintiff demands judgment against Defendants, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD, and Pierre Antoine Marceus MD, for damages in a sum in excess of the minimal jurisdictional limits of this Court, together with interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and 1988, and any other relief this Court deems proper, and demands a trial by jury on all issues so triable.

## COUNT III
## VICARIOUS LIABILITY CLAIM AS TO CENTURION OF FLORIDA, LLC

Plaintiff realleges and readopts paragraphs 1-29 and 30-35 and states:

53.     At all times material hereto, the Defendants, Paula Rojas, R.N., Maritza Mederos RN, Marilyn C. Audain RN, Elizabeth Joyce Carter ARNP, Paula Rosan Swasey, LPN, Yaneisys Martin Rojas, RN, Carmen Dorce Exantus, LPN, Inemesit Nyong Abia MD, Marta A. Castillo MD, Antonio Sergio Pino MD, and Pierre Antoine Marceus MD (collectively, the "Individual Healthcare Provider Defendants"), were agents and/or employees of Defendant, Centurion of Florida, LLC and here acting in the course and scope of their agency and/or relationship with Centurion of Florida, LLC.

54.     As described in paragraphs 1-29 and 30-35, the Indiviudal Healthcare Provider Defendants were negligent in their care and treatment of Decedent, Watkins, resulting in his death.

55.     The Defendant, Centurion of Florida, LLC, at all times material hereto, was the employer, and/or principle of the Individual Healthcare Provider Defendants, and is vicariously liable under the Doctrine of Respondeat Superior, Actual Agency, and/or Apparent Agency, and/or Inherent Agency, for the negligence of their employees and/or agents.

56.     As a direct and proximate result of the negligence of the Individual Healthcare Provider Defendants, the Plaintiff, the ESTATE OF MARTAVIAS WATKINS and his survivors, including his wife and children, have in the past and will in the future suffer the following damages:

     i.   Medical, funeral, and burial expenses due to Martavias Watkins' death; that have become a charge of his Estate and/or that have been paid on behalf of the decedent.

     j.   Loss of support and services, loss of Watkins' companionship, loss of parental guidance, loss of consortium, and for mental pain and suffering resulting from the loss of Watkins.

     k.   All damages allowable under Florida Law and Florida's Wrongful Death Act.

     l.   Loss net accumulations of the Estate.

**WHEREFORE**, the Plaintiff demands judgment against Defendant, Centurion of Florida, LLC, for damages in a sum in excess of the minimal jurisdictional limits of this Court, together with costs of this suit, and any other relief this Court deems proper, and demands a trial by jury on all issues so triable.

### COUNT IV
### WRONGFUL DEATH BASED ON MEDICAL NEGLIGENCE
### AS TO DEFENDANT, CENTURION OF FLORIDA, LLC

Plaintiff realleges and readopts paragraphs 1-29 and states:

57.     Defendant, Centurion of Florida, LLC, treated the decedent, Martavias Watkins, through its physicians, healthcare professionals, and/or other personnel, including the Individual Healthcare Provider Defendants referenced above in Count I and Count II.

58.     At all times material hereto, the Defendant, Centurion of Florida, had a duty to provide appropriate medical care to the decedent according to the acceptable standard of medical care.

59.     Defendant, Centurion of Florida, LLC, breached the foregoing duty by failing to provide sufficient medical care and failing to supervise and ensure that sufficient medical care was

provided to the decedent under the acceptable standard of medical care, and by failure to have proper and adequate policies, procedures, and algorithms, in accordance with the standard of care.

60.     Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, were responsible for adopting and implementing the rules and regulations in regard to the provision of comprehensive healthcare, including medical health care, for inmates under the custody of the FDOC at contracted institutions.

61.     Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, had a duty to ensure that reasonable measures were taken to provide for the safety of individuals incarcerated under the custody of the FDOC at contracted institutions.

62.     Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, had a duty to provide adequate medical care to inmates under the custody of the FDOC at contracted institutions, including the decedent, Watkins.

63.     Defendant, Centurion of Florida, LLC, had a duty to train, supervise, control, and otherwise ensure that medical standard of care was not met and was not violated.

64.     Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, abdicated its policy making and oversight responsibilities, thereby allowing and making foreseeable the circumstances to which the decedent, Watkins, was exposed and that ultimately killed him.

65.     Defendant, Centurion of Florida, LLC, failed to comply with the obligation to provide an acceptable level of health care that was within the standard of care by repeatedly failing to provide inmates, including the decedent, Watkins, under the custody of the FDOC at contracted

institutions, adequate medical health care, including from outside healthcare providers, such as hospitals, for serious medical needs.

66.    As a direct and proximate result of the abovementioned negligence committed by the Defendant, Centurion of Florida, LLC, the decedent's condition was not appropriately treated and he passed away.

67.    As a direct and proximate result of the negligence of Centurion of Florida, LLC, the Plaintiff, the ESTATE OF MARTAVIAS WATKINS and his survivors, including his wife and children, have in the past and will in the future suffer the following damages:

m.  Medical, funeral, and burial expenses due to Martavias Watkins' death; that have become a charge of his Estate and/or that have been paid on behalf of the decedent.

n.  Loss of support and services, loss of Watkins' companionship, loss of parental guidance, loss of consortium, and for mental pain and suffering resulting from the loss of Watkins.

o.  All damages allowable under Florida Law and Florida's Wrongful Death Act.

p.  Loss net accumulations of the Estate.

**WHEREFORE**, the Plaintiff demands judgment against Defendant, Centurion of Florida, LLC, for damages in a sum in excess of the minimal jurisdictional limits of this Court, together with costs of this suit, and any other relief this Court deems proper, and demands a trial by jury on all issues so triable.

## COUNT V
## WRONGFUL DEATH BASED ON MEDICAL NEGLIGENCE
## AS TO DEFENDANT, FDOC

Plaintiff realleges and readopts paragraphs 1-29 and states:

68.    Defendant, FDOC, treated the decedent, Martavias Watkins, through its physicians, healthcare professionals, and/or other personnel, including the Individual Healthcare Provider Defendants and Centurion of Florida, LLC referenced above.

69.     Defendant, FDOC, has privatized healthcare pursuant to a contract with Defendant, Centurion of Florida, LLC.

70.     At all times material hereto, the Defendant, FDOC, had a duty to provide appropriate medical care to the decedent according to the acceptable standard of medical care.

71.     Defendant FDOC, breached the foregoing duty by failing to provide sufficient medical care and failing to supervise and ensure that sufficient medical care was provided to the decedent under the acceptable standard of medical care, and by failure to have proper and adequate policies, procedures, and algorithms, in accordance with the standard of care.

72.     Defendant, FDOC, by and through its final policy makers, officers, agents, servants and/or employees, were responsible for adopting and implementing the rules and regulations in regard to the provision of comprehensive healthcare, including medical health care, for inmates under the custody of the FDOC at contracted institutions.

73.     Defendant, FDOC, by and through its final policy makers, officers, agents, servants and/or employees, had a duty to ensure that reasonable measures were taken to provide for the safety of individuals incarcerated under the custody of the FDOC at contracted institutions.

74.     Defendant, FDOC, by and through its final policy makers, officers, agents, servants and/or employees, had a duty to provide adequate medical care to inmates under the custody of the FDOC at contracted institutions, including the decedent, Watkins.

75.     Defendant FDOC, had a duty to train, supervise, control, and otherwise ensure that medical standard of care was not met and was not violated.

76.     Defendant, FDOC, by and through its final policy makers, officers, agents, servants and/or employees, abdicated its policy making and oversight responsibilities, thereby allowing and

making foreseeable the circumstances to which the decedent, Watkins, was exposed and that ultimately killed him.

77.    Defendant, FDOC, failed to comply with the obligation to provide an acceptable level of health care that was within the standard of care by repeatedly failing to provide inmates, including the decedent, Watkins, under the custody of the FDOC at contracted institutions, adequate medical health care, including from outside healthcare providers, such as hospitals, for serious medical needs.

78.    As a direct and proximate result of the abovementioned negligence committed by the Defendant, FDOC, the decedent's condition was not appropriately treated and he passed away.

79.    As a direct and proximate result of the negligence of FDOC, the Plaintiff, the ESTATE OF MARTAVIAS WATKINS and his survivors, including his wife and children, have in the past and will in the future suffer the following damages:

q.    Medical, funeral, and burial expenses due to Martavias Watkins' death; that have become a charge of his Estate and/or that have been paid on behalf of the decedent.

r.    Loss of support and services, loss of Watkins' companionship, loss of parental guidance, loss of consortium, and for mental pain and suffering resulting from the loss of Watkins.

s.    All damages allowable under Florida Law and Florida's Wrongful Death Act.

t.    Loss net accumulations of the Estate.

**WHEREFORE**, the Plaintiff demands judgment against Defendant, FDOC, for damages in a sum in excess of the minimal jurisdictional limits of this Court, together with costs of this suit, and any other relief this Court deems proper, and demands a trial by jury on all issues so triable.

**COUNT VI**
**42 U.S.C. § 1983 - CIVIL RIGHTS CLAIM**
**VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE**
**UNITED STATES CONSTITUTION FOR**
**DELIBERATE INDIFFERENCE TO A CUSTOM OF DENYING MEDICAL CARE TO**
**INMATES AGAINST CENTURION OF FLORIDA, LLC**

Plaintiff realleges and readopts paragraphs 1-29 and states:

80.     Plaintiff seeks relief under the Federal Civil Rights Act, 42 U.S.C. § 1983 for infringement and deprivation of certain constitutional and fundamental rights under the Eighth and Fourteenth Amendments of the Decedent, Watkins, by Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, in connection with the denial and deprivation of essential medical care.

81.     Defendant, Centurion of Florida, LLC, treated the decedent, Martavias Watkins, through its physicians, healthcare professionals, and/or other personnel, including the Individual Healthcare Provider Defendants pursuant to a contract to provide medical services with co-Defendant, FDOC.

82.     At all times material hereto, the Defendant, Centurion of Florida, had a duty to provide appropriate medical care to the decedent according to the acceptable constitutional standard of medical care.

83.     Defendant, Centurion of Florida, LLC, breached the foregoing duty by failing to provide sufficient medical care and failing to supervise and ensure that sufficient medical care was provided to the decedent under the acceptable standard of medical care and under the United States Constitution, and by failure to have proper and adequate policies, procedures, and algorithms, in accordance with the standard of care.

84.     Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, were responsible for adopting and implementing the

rules and regulations in regard to the provision of comprehensive healthcare, including medical health care, for inmates under the custody of the FDOC at contracted institutions.

85.    Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, had a duty to ensure that reasonable measures were taken to provide for the safety of individuals incarcerated under the custody of the FDOC at contracted institutions that was constitutionally acceptable.

86.    Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, had a duty to provide adequate medical care to inmates under the custody of the FDOC at contracted institutions, including the decedent, Watkins.

87.    Defendant, Centurion of Florida, LLC, had a duty to train, supervise, control, and otherwise ensure that the decedent's constitutional right were not violated.

88.    Defendant, Centurion of Florida, LLC, by and through its final policy makers, officers, agents, servants and/or employees, abdicated its policy making and oversight responsibilities, thereby allowing and making foreseeable the circumstances to which the decedent, Watkins, was exposed and that ultimately killed him.

89.    Defendant, Centurion of Florida, LLC, failed to comply with the obligation to provide an acceptable level of health care under the United States Constitution by repeatedly failing to provide inmates, including the decedent, Watkins, under the custody of the FDOC at contracted institutions, adequate medical health care, including from outside healthcare providers, such as hospitals, for serious medical needs.

90.    Defendant, Centurion, while its contract was in effect with the FDOC, had a policy of directing and/or incentivizing its healthcare employees, including the Co-Defendants, to deny and/or refuse medical care to inmates, regardless of the medical necessity and/or their serious

medical needs, in order to maximize its profitability, and Defendant, Centurion knows of and condones or encourages this custom in deliberate indifference to the serious medical needs of inmates.

91.     Defendant, Centurion, while its contract was in effect with the FDOC, had a policy of directing and/or incentivizing its healthcare employees, including Co-Defendants, to deny and/or refuse medical care to inmates, regardless of the medical necessity and/or their serious medical needs, for cost containment purposes, and Defendant, Centurion knows of and condones or encourages this custom in deliberate indifference to the serious medical needs of inmates.

92.     Defendant, Centurion, while its contract was in effect with the FDOC, had a policy of denying and/or refusing medical care to inmates, regardless of medical necessity and/or their serious medical needs, in order to contain costs and/or to profit.

93.     The aforementioned policies and/or customs was the driving force behind the Co-Defendants' deliberate indifference to Decedent, Watkins' serious medical needs.

94.     The serious medical needs of Martavias Watkins as described throughout this Complaint, were so obviously serious that even a lay person would easily have recognized his need for medical attention, including to be taken to the hospital.

95.     The actions and/or omissions of the Co-Defendants were in total disregard of their duties to the decedent and/or were reckless and created a substantial risk of harm to Watkins, of which they knew of while caring for him, ultimately resulting in his death.

96.     The actions and/or omissions of Co-Defendants clearly violated established constitutional rights afforded to the decedent and which violations were a product of them being deliberately indifferent to Decedent, Watkins' serious medical needs.

97.    Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, while acting under color of state law and by virtue of the authority vested in them by the State of Florida or its subdivisions or agencies, failed to provide medical care and in fact denied medical care for the Decedent, Watkins', serious medical needs.

98.    Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, were responsible for adopting and implementing the rules and regulations in regard to the provision of comprehensive healthcare, including medical and mental health care, for inmates under the custody of the FDOC at contracted institutions.

99.    Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, had a duty to ensure that reasonable measures were taken to provide for the safety of individuals incarcerated under the custody of the FDOC at contracted institutions.

100.    Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, had a constitutional duty to provide adequate medical care to inmates under the custody of the FDOC at contracted institutions, including the Decedent, Watkins.

101.    Defendant, Centurion, had a duty to train, supervise, control, and otherwise ensure that the constitutional rights of persons such as the Decedent, Watkins,, were not violated.

102.    Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, abdicated its policy making and oversight responsibilities, thereby allowing and making foreseeable the circumstances to which Watkins was exposed.

103.    Defendant, Centurion, failed to comply with the obligation to provide a constitutionally acceptable level of health care by repeatedly failing to provide inmates, including the Decedent, Watkins, under the custody of the FDOC at contracted institutions with constitutionally adequate medical health care, including from outside healthcare providers, such

as hospitals, for serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution, causing substantial risk of harm to such inmates, including Martavias Watkins.

104.   Defendant, Centurion, knew or should have known: (i) of reports demonstrating a failure of Defendant, Centurion and its medical personnel to provide constitutionally adequate healthcare, including medical and mental health care, to inmates; and (ii) of a persistent failure of Defendant, Centurion and its medical personnel in denying and/or refusing timely and appropriate medical care from outside healthcare providers, such as outside consultants and/or hospitals, for inmates with serious medical needs like Watkins.

105.   Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, was on notice of the widespread systemic constitutional violations occurring in the institutions it provided inmates with healthcare, including medical and mental health care, and failed to rectify and/or remedy these violations.

106.   The above acts and omissions of Defendant, Centurion, by and through its final policy makers, officers, agents, servants, and/or employees, constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and welfare of the Decedent, Watkins, and those similarly situated resulting in the deprivation of his rights under state and federal law.

107.   Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, actions and/or omissions clearly violated established constitutional rights afforded to Decedent, Watkins, including the right not to be subject to cruel and unusual punishment as guaranteed to inmates by the Eighth and Fourteenth Amendment, rights which any reasonable person knew or should have known existed.

108.    Defendant, Centurion's violations of established constitutional rights were a product of its de facto policy and custom of tolerating, permitting and ratifying a pattern of improper conduct by its final policy makers, officers, agents and/or employees, of which it knew of or should have known of, and which resulted in a widespread health and/or safety problem in connection with the provision of healthcare, including medical and mental health care, to inmates.

109.    Defendant, Centurion, failed to remedy its de facto policies and customs whereby it, by and through its officers, agents, servants and/or employees, permitted, tolerated, and ratified a pattern and practice of unjustified, unreasonable and improper denial of medical care, specifically to inmates who required medical care for serious medical problems and/or serious medical needs, including those inmates that required medical care from outside healthcare facilities, such as hospitals and non-employee specialists and/or surgeons, by (i) ignoring and/or failing to react to a widespread health or safety problem in connection with the provision of healthcare, including medical and mental health care, to inmates; (ii) failing to adopt and/or enact reasonable written rules, regulations, protocols, standards and other guidelines pertinent to the diagnosis, care and treatment of inmates with serious medical needs; (iii) failing to hire and retain competent and knowledgeable medical staff and ensure that only competent and knowledgeable medical staff were assigned to positions providing healthcare, including medical and mental healthcare, to inmates with serious medical needs; (iv) failing to provide appropriate and sufficient training and education for its medical personnel in regards to inmates with serious medical needs; and (v) failing to discipline or prosecute known instances where medical treatment was being denied to inmates with serious medical needs.

110.    Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, actions and/or omissions caused the Decedent, Watkins, to be subject

to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States including the right not to be subject to cruel and unusual punishment as guaranteed to inmates by the Eighth and Fourteenth Amendment.

111.    As a direct and proximate result of the acts and omissions of Defendant, Centurion, by and through its final policy makers, officers, agents, servants and/or employees, as set forth above, and the deliberate indifferent to a known serious medical need exercised by Centurion, and constitutional violations, the Decedent, Watkins, passed away.

112.    As a direct and proximate result of the abovementioned conduct committed by the Defendant, Centurion of Florida, LLC, the decedent's condition was not appropriately treated and he passed away.

113.    The Plaintiff, the ESTATE OF MARTAVIAS WATKINS and his survivors, including his wife and children, have in the past and will in the future suffer the following damages:

u.   Medical, funeral, and burial expenses due to Martavias Watkins' death; that have become a charge of his Estate and/or that have been paid on behalf of the decedent.

v.   Loss of support and services, loss of Watkins' companionship, loss of parental guidance, loss of consortium, and for mental pain and suffering resulting from the loss of Watkins.

w.   All damages allowable under Florida Law and Florida's Wrongful Death Act.

x.   Loss net accumulations of the Estate.

**WHEREFORE**, the Plaintiff demands judgment against Defendant, Centurion of Florida, LLC, for damages in a sum in excess of the minimal jurisdictional limits of this Court, together with interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and 1988, and any other relief this Court deems proper, and demands a trial by jury on all issues so triable.

**COUNT VII**
**42 U.S.C. § 1983 - CIVIL RIGHTS CLAIM**
**VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE**

## UNITED STATES CONSTITUTION FOR
## DELIBERATE INDIFFERENCE TO A CUSTOM OF DENYING MEDICAL CARE TO
## INMATES AGAINST FDOC

Plaintiff realleges and readopts paragraphs 1-29 and states:

114.    Plaintiff seeks relief under the Federal Civil Rights Act, 42 U.S.C. § 1983 for infringement and deprivation of certain constitutional and fundamental rights under the Eighth and Fourteenth Amendments of Decedent, Watkins, by Defendant, FDOC, by and through its final policy makers, officers, agents, servants and/or employees, in connection with the denial and deprivation of essential medical care.

115.    At all times material hereto, in committing each of the acts, omissions and/or commissions complained of herein, the Defendant, FDOC, was acting by and through its final policy makers, officers, agents, servants, and/or employees, who were working in the course and scope of said agency and/or employment, on behalf of the Defendant, FDOC.

116.    At all times material hereto, the FDOC had a nondelegable duty to ensure the health and safety of inmates under the FDOC's custody, and to provide necessary medical services for inmates' serious medical needs.

117.    The FDOC has privatized health services for inmates.

118.    The FDOC contracts with private entities, such as Co-Defendant, Centurion, for them to fulfill the FDOC's healthcare responsibilities to inmates which are in its custody, in order to save money on inmate healthcare costs.

119.    The FDOC entered into a contract with Centurion knowing that there was a significant risk and likelihood that its policies and procedures would result in an unacceptable decline in the quality of the medical care provided to prisoners and noncompliance with the

FDOC's obligations under both Federal and State law to provide health care to inmates, including for their serious medical needs.

120.    The FDOC entered into a contract Co-Defendant, Centurion, either knowing or knowing that there was a significant risk and/or likelihood that it had a policy or custom of directing and/or incentivizing its health care employees to deny and/or refuse medical care to inmates, regardless of the medical necessity and/or their serious medical needs, in order to reduce costs and/or to maximize profits, in deliberate indifference to the serious medical needs of inmates.

121.    The FDOC knew of and condoned or encouraged the custom and practice of employees of its contractors, including Centurion's employees, to deny necessary medical care for inmates' serious medical needs in order to reduce costs and/or increase profits, in deliberate indifference to the serious medical needs of inmates.

122.    The FDOC knew that the aforementioned policies and/or customs of Centurion were continuing to be utilized to deny necessary medical care for inmates' serious needs in order to reduce costs and/or increase profits throughout the term of the contract that was signed in 2012, in deliberate indifference to the serious medical needs of inmates.

123.    The FDOC permitted, tolerated, and ratified a pattern and practice of unjustified, unreasonable and improper denial of medical care, specifically to inmates who required medical care for serious medical problems and/or serious medical needs, including those inmates that required medical care from outside healthcare facilities, such as hospitals and non-employee specialists and/or surgeons.

124.    The aforementioned policies and/or customs was the driving force behind the Co-Defendants' deliberate indifference to Decedent, Watkins' serious medical needs.

125.    The aforementioned policies and/or customs was the driving force behind the Co-Defendants' deliberate indifference to Decedent, Watkins', serious medical needs, as set forth in the above Counts, in that they were denying Decedent, Watkins, medical care for his serious medical needs to reduce costs and/or to increase profits.

126.    The FDOC knew or should have known that the cost control measures implemented and utilized by Centurion and its medical personnel resulted in the denial of constitutionally-required medical care for inmates with serious medical needs.

127.    The FDOC knew the same or similar cost control measures were being utilized by other of its contractors, both currently and in the past (for example: Wexford), to deny and/or refuse medical care for inmates' serious medical needs, yet permitted, tolerated, and ratified a pattern and practice of unjustified, unreasonable and improper denial of medical care by its other contractors because it saved the FDOC money.

128.    The FDOC has a long history of contracting with companies that sacrificed constitutionally manmdated levels of care in order to save money, costs, expense, and to increase profits.

129.    As a direct and proximate result of the acts and omissions of Defendant, FDOC, by and through its final policy makers, officers, agents, servants and/or employees, as set forth above, and the deliberate indifferent to a known serious medical need exercised by FDOC, and constitutional violations, the Decedent, Watkins, passed away.

130.    As a direct and proximate result of the abovementioned conduct committed by the Defendant, FDOC, the decedent's condition was not appropriately treated and he passed away.

131.    The Plaintiff, the ESTATE OF MARTAVIAS WATKINS and his survivors, including his wife and children, have in the past and will in the future suffer the following damages:

y.  Medical, funeral, and burial expenses due to Martavias Watkins' death; that have become a charge of his Estate and/or that have been paid on behalf of the decedent.

z.  Loss of support and services, loss of Watkins' companionship, loss of parental guidance, loss of consortium, and for mental pain and suffering resulting from the loss of Watkins.

aa. All damages allowable under Florida Law and Florida's Wrongful Death Act.

bb. Loss net accumulations of the Estate.

**WHEREFORE**, the Plaintiff demands judgment against Defendant, FDOC, for damages in a sum in excess of the minimal jurisdictional limits of this Court, together with interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and 1988, and any other relief this Court deems proper, and demands a trial by jury on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

DATED this 24th day of May 2021.

Respectfully Submitted,

**GOLDBERG & ROSEN, P.A.**
*Attorneys for Plaintiff(s)*
2 South Biscayne Blvd, Suite 3650
Miami, Florida 33131
Tel: (305) 374-4200 / Fax: (305) 374-8024

/s/ Mustafa Dandashly

By: _____

Judd G. Rosen, Esq., Fl. Bar No.: 0458953
Brett M. Rosen, Esq., Fl. Bar No.: 44859
Mustafa H. Dandashly, Esq., Fl. Bar No. 118159
Email: pleadings@goldbergandrosen.com (primary)
Secondary: mdandashly@goldbergandrosen.com